Nos. 22-55992; 22-56041

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

NATURAL-IMMUNOGENICS CORP., a Florida corporation,

Plaintiff-Appellee,

v.

NEWPORT TRIAL GROUP, a California Corporation;
SCOTT J. FERRELL, a California resident,

Appellants,

and

RYAN M. FERRELL, an Arizona resident; VICTORIA C.
KNOWLES, a California resident; ANDREW LEE BASLOW,
a California resident; ANDREW NILON, a California resident;
SAM PFLEG, a California resident; MATTHEW
DRONKERS, a California resident; TAYLOR DEMULDER, a
Nevada resident; SAM SCHOONOVER, a California resident;
GIOVANNI SANDOVAL, an Arizona resident,

Defendants.

_____

Appeal from a Decision of the United States District Court,
Central District of California, Southern Division
(No. 8:15-cv-02034-JVS-JCG) • Honorable James V. Selna

_____

**APPELLANTS' THIRD BRIEF ON CROSS-APPEAL [REDACTED]**

_____

CALLAHAN & BLAINE, APLC
David J. Darnell (SBN 210166)
James M. Sabovich (SBN 218488)
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444 / Facsimile: (714) 241-4445
Attorneys for Appellants

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................... 10

II.  NIC's Attempt To Prejudice This Court Against
     NIC Should Be Disregarded ................................................ 16

III. NIC HAS NOT REBUTTED THE SHOWING
     THAT THE DISTRICT COURT ERRED IN
     GRANTING NIC'S MOTION TO ENFORCE ................. 19

     A.  NIC Concedes That The District Court
         Ordering The Wrong Party To Pay Requires
         Reversal ................................................................ 20

     B.  NIC's Telling Of The Circumstances Regarding
         Confidentiality Is Not Accurate ............................... 23

     C.  The District Court Erred In Limiting
         Confidentiality ████████████████████
         ████████████████████████████████
         ██████████████████ ................. 26

     D.  NIC Has Not Rebutted Appellants' Showing
         That The District Court Read Liquidated
         Damages Out Of The Agreement ............................. 36

     E.  NIC's Arguments Regarding The Enforceability
         Of The Term Sheet Are Beside The Point ............... 41

IV.  THE TRIAL COURT DID NOT ERR IN DENYING
     NIC'S MOTION FOR SANCTIONS ................................ 42

     A.  NIC Offered No Evidence Of Improper, Much
         Less Sanctionable Conduct ...................................... 44

         1.  NIC Has No Actual Evidence Of Bad
             Faith With Regard To The Confidentiality
             Provision ......................................................... 46

# TABLE OF CONTENTS

## (Continued)

Page

       2.     NIC's Rule That Broader Confidentiality Necessarily Violates Rule 5.6 Is Fabricated ....................................................... 48

   B.    NIC's Other Arguments For Sanctions Are Inappropriate And Irrelevant.................................... 54

V.    CONCLUSION ................................................................. 55

## TABLE OF AUTHORITIES

<u>Pages</u>

**Cases**

*In re Adamson Apparel, Inc.*,
  785 F.3d 1285 (9th Cir. 2015) ........................................................ 45

*Assassination Archives & Rsch. Ctr. v. C.I.A.*,
  48 F. Supp. 2d 1 (D.D.C. 1999) ............................................... 47, 48

*Blank v. Borden*,
  11 Cal. 3d 963 (1974) ............................................................. 40, 41

*Block v. Starbucks Corp.*,
  No. 115CV00991DADCKD, 2018 WL 4352906
  (E.D. Cal. Sept. 11, 2018) ............................................................. 29

*Blue Cross & Blue Shield Ass'n v. UHS of Delaware,
  Inc.*,
  No. 12 C 8196, 2014 WL 716462 (N.D. Ill. Feb. 25,
  2014) ............................................................................................. 29

*California & Hawaiian Sugar Co. v. Sun Ship, Inc.*,
  794 F.2d 1433 (9th Cir. 1986) ....................................................... 41

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ........................................................................ 44

*Cole v. Doe 1 thru 2 Officers of City of Emeryville Police
  Dep't*,
  387 F. Supp. 2d 1084 (N.D. Cal. 2005) ........................................ 31

*Cooper Cos., Inc. v. The Transcontinental Co.*,
  31 Cal. App. 4th 1094 (1995) ........................................................ 32

*Del Monte Properties & Investments, Inc. v. Dolan*,
  26 Cal. App. 5th Supp. 20 (2018) ................................................. 38

4

TABLE OF AUTHORITIES

(Continued)

<u>Pages</u>

*Engquist v. Or. Dep't of Agric.*,
  478 F.3d 985 (9th Cir.2007) ........................................................ 21

*Exxon Mobil Corp. v. New W. Petroleum L.P.*, No. CIV.
  03-02222 WBSEFB, 2008 WL 2561599 (E.D. Cal.
  June 26, 2008) ............................................................................. 19

*Facebook, Inc. v. ConnectU, Inc.*,
  No. C 07-01389 JW, 2008 WL 11357787 (N.D. Cal.
  July 2, 2008) ............................................................................... 29

*Facebook Inc. v. Pacific Northwest Software, Inc.*,
  640 F.3d (9th Cir. 2011) .............................................................. 37

*Fields v. Brown*,
  503 F.3d 755 (9th Cir. 2007) ....................................................... 21

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) ....................................................... 45

*Garcia v. Carnival Corp.*,
  No. 17-20748-CIV, 2018 WL 11460961 (S.D. Fla.
  Aug. 1, 2018) .............................................................................. 35

*Garcia v. Truck Ins. Exchange*,
  36 Cal.3d 426 (1984) ................................................................... 34

*Gilbert v. Nat'l Corp. for Hous. Partnerships*,
  71 Cal. App. 4th 1240 (1999) ...................................................... 53

*GT Sec., Inc. v. Klastech GmbH*,
  No. 13-CV-03090-JCS, 2015 WL 2374609 (N.D. Cal.
  May 15, 2015) .............................................................................. 40

## TABLE OF AUTHORITIES

(Continued)

<u>Pages</u>

*Gutierrez v. Santa Rosa Mem'l Hosp.*,
   No. 16-CV-02645-SI, 2016 WL 7212302 (N.D. Cal.
   Dec. 13, 2016) ............................................................. 30

*Harbor Capital, Inc. v. Carnival Air Lines, Inc.*,
   210 F.3d 1112 (9th Cir. 2000)...................................... 45

*Hazel v. Washington Metro. Area Transit Auth.*,
   No. CIV.A. 02-1375(RWR), 2006 WL 3623693
   (D.D.C. Dec. 4, 2006).................................................. 30

*Hinckley v. Bechtel Corp.*,
   41 Cal. App. 3d 206 (1974) .......................................... 38

*Hudson v. Moore Business Forms, Inc.*,
   836 F.2d 1156 (9th Cir. 1987)...................................... 49

*Huynh v. City of Worcester*,
   No. CIV.A. 08-40240-TSH, 2010 WL 3245430
   (D. Mass. Aug. 17, 2010) ...................................... 31, 51

*Ibrahim v. U.S. Dep't of Homeland Sec.*,
   912 F.3d 1147 (9th Cir. 2019)...................................... 45

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.*,
   957 F.3d 1038 (9th Cir. 2020)...................................... 20

*Johnson v. U.S. Bank Nat'l Ass'n*,
   No. 11-CV-538-WMC, 2012 WL 12995323 (W.D.
   Wis. Dec. 17, 2012)..................................................... 30

*Kimmel & Silverman, P.C. v. Porro*,
   969 F. Supp. 2d 46 (D. Mass. 2013)................. 31, 50, 51

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
   176 F. Supp. 3d 949 (E.D. Cal. 2016) .......................... 33

6

# TABLE OF AUTHORITIES

## (Continued)

<u>Pages</u>

*Levi Strauss & Co. v. Aetna Casualty & Surety Co.*,
184 Cal. App. 3d 1479 (1986) ....................................................... 37

*Ludwig v. Astrue*,
681 F.3d 1047 (9th Cir. 2012) ...................................................... 21

*Lunada Biomedical v. Nunez*,
230 Cal. App. 4th 459 (2014) ....................................................... 40

*M.G. v. O.G.*,
No. B254358, 2016 WL 4199178 (Aug. 9, 2016) ................. 31, 53

*McGuire v. More-Gas Investments, LLC*,
220 Cal. App. 4th 512 (2013) ....................................................... 38

*Milicevic v. Fletcher Jones Imports, Ltd.*,
402 F.3d 912 (9th Cir. 2005) ....................................................... 22

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
No. SACV152034JVSJCGX, 2019 WL 3110021
(C.D. Cal. Mar. 19, 2019) .............................................................. 17

*Nilon v. Nat.-Immunogenics Corp.*,
No. 3:12-CV-00930-LAB, 2015 WL 1914849 (S.D.
Cal. Apr. 27, 2015) ........................................................................ 17

*Nilon v. Nat.-Immunogenics Corp.*,
No. 3:12CV00930-LAB, 2013 WL 5462288 (S.D.
Cal. Sept. 30, 2013) ...................................................................... 17

*Pappas v. Chang*,
75 Cal. App. 5th 975 (2022) ......................................................... 53

*Quinteros v. InnoGames*,
No. C19-1402 RSM, 2020 WL 995854 (W.D. Wash.
Mar. 2, 2020) ................................................................................ 43

# TABLE OF AUTHORITIES

## (Continued)

<u>Pages</u>

*Remington Invs., Inc. v. Kadenacy*,
930 F. Supp. 446 (C.D. Cal. 1996)................................................. 49

*In re RW Meridian LLC*,
No. 3:16-BK-00629, 2017 WL 6045220 (B.A.P. 9th
Cir. Dec. 6, 2017) ........................................................................... 23

*Shepard v. Foremost Ins. Co.*,
365 F. App'x 76 (9th Cir. 2010) .................................................... 21

*Souza v. 65 St. Marks Bistro*,
No. 15-CV-327 (JLC), 2015 WL 7271747 (S.D.N.Y.
Nov. 6, 2015) ................................................................................. 52

*Suarez v. Life Ins. Co. of North America*,
206 Cal. App. 3d 1396 (1988) ....................................................... 34

*Tradewinds Airlines, Inc. v. Soros*,
No. 08 CIV. 5901 JFK, 2009 WL 1321695 (S.D.N.Y.
May 12, 2009)................................................................... 31, 49, 50

*Tycom Corp. v. BancBoston Ventures, Inc.*,
108 F.3d 1386 (9th Cir. 1997) ....................................................... 39

*U.S. EEOC v. Rush Prudential Health Plans*,
No. 97 C 3823, 1998 U.S. Dist. LEXIS 4170 (N.D. Ill.
Mar. 31, 1998) ............................................................................... 29

*United States v. 1.377 Acres of Land, More or Less,
situated in City of San Diego, Cnty. of San Diego,
State of Cal.*,
352 F.3d 1259 (9th Cir. 2003) ....................................................... 28

*United States v. Madkins*,
994 F.2d 540 (8th Cir. 1993) ......................................................... 19

8

## TABLE OF AUTHORITIES

### (Continued)

Pages

*United States v. Stoneberger*,
  805 F.2d 1391 (9th Cir.1986) ....................................................... 45

*Wilkins v. Barber*,
  No. 219CV1338WBSKJNP, 2021 WL 4992665 (E.D.
  Cal. Oct. 27, 2021) ........................................................................ 43

*Wisekal v. Lab. Corp. of Am.*,
  Case No. 12-80806-CIV-HURLEY, 2016 WL
  4154781 (S.D. Fla. Mar. 8, 2016) ................................................ 35

**Statutes and Rules**

21 C.F.R. § 310.548(a) ........................................................................ 17

28 U.S.C. § 2111 .................................................................................. 21

Cal. R. Prof. Conduct R. 5.6 ................................................................ 51

Fed. R. Civ. Proc. 62 ........................................................................... 23

Mass. R. Prof. Conduct R. 5.6 ............................................................. 51

**Other Authorities**

ABA Formal Opinion No. 00-417 ................................................. 52, 53

## I.   <u>INTRODUCTION</u>

This is a settled case where the District Court erred in fundamentally altering the terms of the term sheet agreement ("Term Sheet") at issue.  As Appellee Natural Immunogenics Corp. ("NIC") admits, the District Court's order ("Order") directed the wrong party to pay the settlement.  That, at a minimum, requires reversal.

More fundamentally, as seen in Appellants' Opening Brief ("Appellants' Br."), the trial court effectively rewrote the parties' agreement. The Term Sheet called for confidentiality and liquidated damages. ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Unfortunately, the District Court indulged NIC's unnecessary exercise in excessive litigation and committed multiple errors in doing so. ███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

████████████████████

NIC's Second Brief on Cross Appeal ("Appellee Br.") sets out a fiction that is premised on Appellants ████████████████

████████████████████████████████

████████████████████████████████

████████████████████ According to NIC, this supposed demand "created an impasse in the parties' discussions following mediation." Appellee Br. at 51. Based on this, NIC attempts to justify its refusal to negotiate on the scope of confidentiality and to justify its demand for sanctions. *Id.* at 20 ("The parties reached an impasse after NTG refused to back off its unethical settlement demands [regarding confidentiality]. NIC was not obligated to continue discussions with a party demanding unethical revisions . . . ."); 41 ("Through those unreasonable [confidentiality] demands, NTG delayed NIC's receipt of settlement money by nearly nine months.").

That did not happen. *Infra.*Parts.III.B and IV. To be clear, NIC's "practice of law" restriction argument is a pretext that NIC made up to justify its failure to meaningfully negotiate confidentiality. Appellants' very first draft of the settlement agreement included a clarification ██

11

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████

NIC simply ignores this fact.  It has no explanation for how a draft with an express statement that ████████████████████ ████████████████████████████████████████ ███████████████████████████████.  Given that every

draft of the settlement agreement expressly disclaimed any restriction on ██████████████████████████████ it is hardly surprising that NIC never raised concerns over Rule 5.6 ███████████. ██████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

NIC's retorts on the contractual merits are little better. ██████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



Finally, the District Court did not abuse its discretion in denying NIC's motion for sanctions based on a claimed violation of Rule 5.6. The request was facially frivolous. ████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████ somehow did exactly that (i.e., restricted a lawyer's ability to practice law). (14-ER-3325). That is why NIC did

not raise the "issue" in four months of negotiations. Even setting that aside, confidentiality in settlement agreements is common and there is no authority for the proposition that proposing confidentiality subjects a party to sanctions. *Infra.* Part.IV.

Ultimately, NIC's Brief underscores why Appellants bargained for meaningful confidentiality as a condition of settlement. This is a case that was "litigated grossly out of proportion to the amount reasonably at issue," (2-ER-168). Moreover, as is evident from the hyperbole and vitriol in NIC's Brief, it is a case where NIC (and likely its counsel) hold a deep and abiding distain for NTG and its lawyers. Meaningful confidentiality is necessary if the litigation is to end, which is what NTG bargained for. Given the long and arduous history of this highly contentious litigation and NIC's personal animosity for the other side, confidentiality that brings "peace in the valley" is an essential component of why NTG agreed ███████████████ to resolve this matter.

Accordingly, the District Court's Order is erroneous and must be reversed to the extent it granted NIC's motion to enforce. It should be affirmed as to the denial of sanctions.

## II.  NIC's Attempt To Prejudice This Court Against NIC Should Be Disregarded

This Appeal is predominately a straightforward and limited contract interpretation dispute.  The parties agree that the Term Sheet is a valid and enforceable contract.  They agree on what it states.  There is no meaningful dispute over the credibility of extrinsic evidence.  The issues are essentially limited to the reasonable interpretation of the language of the Term Sheet, as informed by the parties' post-agreement conduct and other evidence.

Appellants filed a measured brief limited to the legal issues.  *See generally* Appellants' Brief.  There was no effort to demonize NIC by evidence of its litigation misconduct.  Appellants did not cite bad acts which would portray NIC in a negative light but which were ultimately irrelevant to the issues under consideration.  As seen in the related appeal, such evidence – from NIC blackmailing witnesses pre-filing to attempting to obtain "death penalty" sanctions with false declarations – abounds.  *See* Dkt. 6 in Case No. 22-55990 at 30-33.  Nor did Appellants attempt to portray themselves as virtuously crusading against their litigation opponents' wrongdoing.  It would not have been

difficult.[1]  NTG sued NIC after learning that a terminally ill family friend had been deceived into believing NIC's product provided immune support.  *See* Dkt. 6 in Case No. 22-55990 at 22.  And under the circumstances,[2] an impartial observer could conclude that NIC's goal in this lawsuit is deter other claims against it, leaving it effectively free to engage in false advertising.

Unfortunately, NIC spends more time trying to induce undue prejudice against Appellants than addressing the legal merits.[3]  Much

---

[1] NIC markets a product with no health benefits as providing immune support.  *Nilon v. Nat.-Immunogenics Corp.*, No. 3:12CV00930-LAB, 2013 WL 5462288, at *1 (S.D. Cal. Sept. 30, 2013) ("Natural–Immunogenics makes and sells a colloidal silver dietary supplement that claims to provide immune support."); 21 C.F.R. § 310.548(a) (regarding colloidal silver "[t]here are serious and complicating aspects to many of the diseases these silver ingredients purport to treat or prevent" and "there is a lack of adequate data to establish general recognition of the safety and effectiveness of colloidal silver ingredients or silver salts for OTC use in the treatment or prevention of any disease.").

[2] The underlying case resolved without reaching the merits of whether NIC was engaged in false advertising and with less than $250,000 spent on defense.  *Nilon v. Nat.-Immunogenics Corp.*, No. 3:12-CV-00930-LAB, 2015 WL 1914849, at *3 (S.D. Cal. Apr. 27, 2015); *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No. SACV152034JVSJCGX, 2019 WL 3110021, at *8 (C.D. Cal. Mar. 19, 2019).  NIC spent multiples of that amount on a retaliatory RICO suit, which the District Court found "has been litigated grossly out of proportion to the amount reasonably at issue . . . ." (2-ER-168).

[3] NIC makes much of prior sanctions orders, none of which have

of NIC's brief is spent on character assassination of Appellants through a slated telling of its allegations and proceedings. Appellee Br. at 7-12 (claiming that "NTG employed guerrilla tactics," and NTG's lawyer was disbarred due a different case; that "Defendants misleadingly labeled documents to avoid disclosure in discovery"; that "NTG repeatedly targeted opposing counsel with ad hominem attacks and intimidation tactics in retaliation for having filed the RICO lawsuit"; that six years ago, "Scott Ferrell prepared a 'draft' complaint threatening RICO claims against NIC's attorneys based on false personal attacks including false allegations of plagiarism and sexual misconduct—statements designed to defame counsels' personal reputations"; and similar allegations). There are multi-page sections that have literally nothing to do with the motion to enforce that is the subject of the appeal. *Id.* at 7-14.

For all of NIC's talk of "unethical" conduct via a draft settlement agreement that expressly disclaimed the exact conduct NIC claimed it imposed, it is NIC's attempt to prejudice a reviewing Court against

---

anything to do with the pending motion. Tellingly, NIC does not disclose how frequently it requested sanctions. Where, as here, a party habitually seeks sanctions in a long running, four-figure docket case, it is hardly surprising that it occasionally obtains them.

Appellants that is improper. On appeal in *United States v. Madkins*, 994 F.2d 540, 542–43 (8th Cir. 1993), the government "volunteered considerable 'background' information on the defendant that painted him in a negative light but was not part of the challenged decision. The Court observed that "[t]hese statements in the brief are an attempt to prejudice this court's examination of the case, and are highly inappropriate." *Id*. The same applies to NIC. Its parade of horribles has nothing to do with the actual issues before the Court and is a "highly inappropriate" effort to prejudice the Court. Accordingly, NIC's underhanded tactics should be ignored. *See Exxon Mobil Corp. v. New W. Petroleum L.P.*, No. CIV. 03-02222 WBSEFB, 2008 WL 2561599, at *1 (E.D. Cal. June 26, 2008), at *1 ("Rather than attempt to strike, add, modify, or rewrite portions of the parties' briefs, the preferable approach is simply for the court to ignore arguments in the briefs which are irrelevant to the issues.").

## III. <u>NIC HAS NOT REBUTTED THE SHOWING THAT THE DISTRICT COURT ERRED IN GRANTING NIC'S MOTION TO ENFORCE</u>

As seen in Appellants' Brief, the District Court Order made four errors that resulted in it fundamentally altering the settlement agreed to

by the parties. First, it required "Defendants" to pay the settlement amount when all parties had agreed that doing so would be only NTG's obligation. Appellants' Br. at 21. Second, it misinterpreted the scope of confidentiality in the Term Sheet, which was not fully defined and ambiguous when viewed in context. *Id.* at 21-30. Third, it compounded that error by unduly restricting the obligation to negotiate the scope of confidentiality to whether it would apply to the "entirety of the settlement agreement" or only "cover a few specific terms." *Id.* at 30-34. Fourth and finally, the Order erred by effectively reading the liquidated damages provision out of the Term Sheet. *Id*. at 38-39. NIC does not contest that such legal errors are reviewed *de novo*. *Int'l Bhd. of Teamsters v. NASA Servs., Inc*., 957 F.3d 1038, 1041 (9th Cir. 2020).

## A.   <u>NIC Concedes That The District Court Ordering The Wrong Party To Pay Requires Reversal</u>

NIC concedes that the Order directs the wrong party to pay. Appellee Br. at 24-25. The parties had agreed that ███████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████

NIC contends that the error was "harmless" and "moot" because the judgment was paid. Appellee Br. at 24-25. The harmless error rule, as codified, requires this Court to "give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). It applies when an error might not have affected the judgment. "If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand." *Fields v. Brown*, 503 F.3d 755, 800 (9th Cir. 2007) *quoting Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). For example, a district court's erroneous exclusion of evidence does not warrant reversal unless the error "more probably than not tainted the verdict." *Engquist v. Or. Dep't of Agric.,* 478 F.3d 985, 1009 (9th Cir.2007), *aff'd* 553 U.S. 591. Or a choice of law error would be harmless when the laws of the competing jurisdiction are "substantially similar." *Shepard v. Foremost Ins. Co.*, 365 F. App'x 76, 77 (9th Cir. 2010).

Here, there is no possibility of a "harmless" error because it is undisputed that the error affected the judgment. ████████████ ████████████████████████████████ NIC has not cited, and NTG has not located, any case suggesting that the source of funds used to pay an otherwise improper judgment pending appeal has any bearing on a "harmless error" analysis.

Nor does the payment of the judgment pending appeal render the issue "moot" as NIC claims. It is frankly unclear how NIC can make such an argument when controlling authority is directly to the contrary:

> The usual rule in the federal courts is that payment of a judgment does not foreclose an appeal. Unless there is some contemporaneous agreement not to appeal, implicit in a compromise of the claim after judgment, and so long as, upon reversal, restitution can be enforced, payment of the judgment does not make the controversy moot.

*Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 915 (9th Cir. 2005) *quoting Woodson v. Chamberlain*, 317 F.2d 245, 246 (4th Cir.1963). NIC does not cite, and Appellants are not aware of, any authority supporting the proposition that a judgment having been "paid" pending appeal somehow renders errors in the propriety of a

money judgment moot. Such a rule would upend appellate litigation generally since, absent a stay, judgments are enforceable after 30 days, including during the pendency of an appeal. Fed. R. Civ. Proc. 62; *In re RW Meridian LLC*, No. 3:16-BK-00629, 2017 WL 6045220, at *3 (B.A.P. 9th Cir. Dec. 6, 2017) ("While an appeal is pending, federal judgments and orders are fully effective and enforceable absent a stay pending appeal.").

Because the District Court erred in ordering the wrong party to pay the settlement amount, the Order must be reversed.

## B. <u>NIC's Telling Of The Circumstances Regarding Confidentiality Is Not Accurate</u>

NIC's retelling of the negotiation regarding confidentiality is so dissimilar from the actual facts as to border on surreal. Throughout its brief, NIC repeatedly represents that NTG presented █████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ that the demand was unlawful, in

violation of Rule 5.6 of the California Rules of Professional Conduct,"

and that ███████████████████████████████████

███████████████████████████████████████████

███████████ Were this true, one would expect the proposed settlement

agreement to contain ████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████



[4] NIC may argue that this language appeared in the ██████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████ That, by definition, means it could not be interpreted in such a way as to restrict the practice of law.



Indeed, NIC now concedes that this issue was never raised and has shifted ground to argue it had no obligation and was somehow ethically prohibited from doing so. Appellee Br. at 51-52. As seen below, *infra*.Part.IV, NIC's arguments are beside the point or without merit.

In sum, NIC's claims of an impasse because of an "unethical" restriction on the practice of law are a pretext. There was no such restriction and no such impasse.

## C. The District Court Erred In Limiting Confidentiality ▉

As seen in Appellants' Brief, the District Court erred in its treatment of confidentiality. Appellants' Br. at 23-34. It summarily

resolved the scope of confidentiality by narrowly interpreting the phrase "confidentiality for settlement terms." (14-ER-3083). It accepted NIC's interpretation that "settlement terms" refers only to "the terms of the settlement agreement itself" and that the agreement to be negotiated "suggests that the parties would negotiate over which settlement terms would ultimately be held confidential." *Id*.

This was error. ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████ "Under California law, contracts are to be interpreted as a unified whole, with effect given to each provision to the

greatest extent possible" and 'an interpretation which renders part of the instrument to be surplusage should be avoided.'" *United States v. 1.377 Acres of Land, More or Less, situated in City of San Diego, Cnty. of San Diego, State of Cal*., 352 F.3d 1259, 1265 (9th Cir. 2003) *quoting Appalachian Ins. Co. v. McDonnell Douglas Corp*., 214 Cal. App. 3d 1, 12 (1989).

NIC attempts to explain away this issue by positing 

This interpretation is both unreasonable and inconsistent with the extrinsic evidence and should have been rejected by the District Court.

First, it is inconsistent with the definition of

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

████████████████████

Second, NIC's interpretation is contrary to prevailing standards and would be atypical. As this Court is aware, clauses requiring that all settlement terms be kept confidential are quite common. *Block v. Starbucks Corp.*, No. 115CV00991DADCKD, 2018 WL 4352906, at *6 (E.D. Cal. Sept. 11, 2018) ("The court recognizes that it is common practice for parties to bargain for and rely upon the continued confidentially of the terms of a settlement agreement."); *Facebook, Inc. v. ConnectU, Inc.*, No. C 07-01389 JW, 2008 WL 11357787, at *3-4 (N.D. Cal. July 2, 2008) (finding that "the terms of the settlement [agreement] and the negotiations preceding it" are documents traditionally kept secret . . . ."); *U.S. EEOC v. Rush Prudential Health Plans*, No. 97 C 3823, 1998 U.S. Dist. LEXIS 4170, at *12 (N.D. Ill. Mar. 31, 1998) ("Confidentiality clauses are common in settlement agreements...."); *Blue Cross & Blue Shield Ass'n v. UHS of Delaware,*

*Inc.*, No. 12 C 8196, 2014 WL 716462, at *4 (N.D. Ill. Feb. 25, 2014)

("The desire to keep a term in a settlement agreement confidential is

common."); *Johnson v. U.S. Bank Nat'l Ass'n*, No. 11-CV-538-WMC,

2012 WL 12995323, at *5 (W.D. Wis. Dec. 17, 2012) ("Inserting a

confidentiality clause into a settlement agreement is a common

practice.").

Broader confidentiality agreements covering underlying "facts"

and the like may not be as ubiquitous as those limited to settlement

terms but they are still common.  In *Gutierrez v. Santa Rosa Mem'l*

*Hosp.*, No. 16-CV-02645-SI, 2016 WL 7212302, at *5 (N.D. Cal. Dec.

13, 2016), for example, the District Court enforced "settlement

agreements [that] prohibit the disclosure of 'the details and any and all

facts giving rise to this action ... as well as the names and backgrounds

of the parties to this action.'"  Even though the plaintiff argued – as NIC

does – that confidentiality agreements run counter to public policy

concerns, the District Court enforced that confidentiality provision by

striking the disclosing language from the complaint with prejudice.  *Id.*;

*see also Hazel v. Washington Metro. Area Transit Auth.*, No. CIV.A.

02-1375(RWR), 2006 WL 3623693, at *1 (D.D.C. Dec. 4, 2006)

(enforcing confidentiality clause stating, "[t]he terms of this settlement,

as well as all facts and events leading up to the filing of a charge by Ms. Hazel shall be strictly confidential."); *Tradewinds Airlines, Inc. v. Soros*, No. 08 CIV. 5901 JFK, 2009 WL 1321695, at *2 (S.D.N.Y. May 12, 2009) (settlement agreement with confidentiality clause covering "the claims for relief sought against [defendants] and the bases or asserted bases therefore . . ."); *Kimmel & Silverman, P.C. v. Porro*, 969 F. Supp. 2d 46, 48, 51 (D. Mass. 2013) (settlement confidentiality clause that covered the "underlying facts" was enforceable); *Huynh v. City of Worcester*, No. CIV.A. 08-40240-TSH, 2010 WL 3245430, at *1 (D. Mass. Aug. 17, 2010) (Settlement containing "a confidentiality clause which barred the Plaintiff or his attorney from discussing the merits of the case, other than the fact that the case had settled" held enforceable). In a widely followed case involving actor Mel Gibson, the Court of Appeal found that by discussing alleged abuse on the "Howard Stern" show, a party had breached "the Settlement Agreement [that] expressly required [the parties] to keep confidential 'any and all information and facts related to the asserted claims and events underlying this Agreement,'" including "'[O.G.'s] allegations that [M.G.] committed domestic violence on her.'" *M.G. v. O.G.*, No. B254358, 2016 WL 4199178, at *7 (Aug. 9, 2016); *Cole v. Doe 1 thru*

*2 Officers of City of Emeryville Police Dep't*, 387 F. Supp. 2d 1084, 1103, fn. 7 (N.D. Cal. 2005) (noting that while "California Rule of Court 977(a) prohibits citation or reliance by a court of an unpublished California Court of Appeal decision . . . the rule is not binding in the federal courts.").

While it is possible that settlements can apply confidentiality to some, but not all, settlement terms, that is rare. NIC has not cited an example in the case law of such an agreement, nor have Appellants located any.

Given this, the reasonable, ███████████████████ ██████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████ *Cooper Cos., Inc. v. The Transcontinental Co*., 31 Cal. App. 4th 1094, 37 Cal. Rptr. 2d 508, 515 (1995) (courts "may also employ 'common sense'" in interpreting the contract (quoting *Bank of the West*, 2 Cal. 4th at 1276, 10 Cal. Rptr. 2d 538, 833 P. 2d 545)).

This is borne out by the extrinsic evidence. As NIC implicitly concedes, ████████████████████████████████████████ ████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████ The "'most reliable evidence of the parties' intentions is their behavior after the contract is signed and before any controversy has arisen." *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 964 (E.D. Cal. 2016) *quoting Kennecott Corp. v. Union Oil Co.*, 196 Cal. App. 3d 1179, 1189, 242 Cal. Rptr. 403 (1987).

NIC's behavior after the Term Sheet was signed but before the current dispute arose proves NIC did not really believe ██████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████ *See generally* 14-ER-3192-3259 ██████████████████████████

██████████████████████████████████████████

██████████████████████████████ If, as the District Court Order found, there was an agreement ██████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████

NIC attempts to dismiss this evidence in two ways. First, it disputes ambiguity and therefore the need to consider extrinsic evidence. Appellee Br. at 27-28. But a contract provision is ambiguous "when it is capable of two or more constructions both of which are reasonable." *Suarez v. Life Ins. Co. of North America* 206 Cal. App. 3d 1396, 1402 (1988). ███████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████ Under California law, "parol or extrinsic evidence is admissible to resolve an ambiguity." *Garcia v. Truck Ins. Exchange* 36 Cal.3d 426, 435 (1984).

Second, NIC straw mans the extrinsic evidence by pretending that NTG is offering its own unilateral statements as evidence of the parties' intent. Appellee Br. at 28. According to NIC, NTG is offering drafts and other extrinsic evidence as "demonstrating a different meaning for 'settlement terms' in the Term Sheet." Appellee Br. at 29-30. Based on this, NIC complains that NTG "fails to explain how its

unaccepted—and contested—draft agreement could be evidence of the parties' mutual intent months earlier at mediation."  Appellee Br. at 29-30.  NIC misses the point.  The extrinsic evidence refutes NIC's proffered interpretation.  If, as NIC claims, ██████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████  Appellants' Br. at 24.

███████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

*Garcia v. Carnival Corp.*, No. 17-20748-CIV, 2018 WL 11460961, at *3 (S.D. Fla. Aug. 1, 2018) (holding "that the Parties failed to reach a settlement agreement on January 11, 2018 because the Parties had not agreed upon an essential term of the settlement—specifically, the confidentiality clause."); *Wisekal v. Lab. Corp. of Am.*, Case No. 12-

80806-CIV-HURLEY, 2016 WL 4154781, at *4 (S.D. Fla. Mar. 8, 2016) (denying motion to enforce settlement on the grounds that the confidentiality agreement was an essential term and there was no meeting of the minds on that term).

Accordingly, the District Court should have denied NIC's motion and directed it to negotiate in good faith.

**D.** **NIC Has Not Rebutted Appellants' Showing That The District Court Read Liquidated Damages Out Of The Agreement**

NIC does not dispute that the parties specifically ██████ ████████████████████████████████████████████████████ This was integral and incorporated into two separate duties. First, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ Yet the District Court eliminated liquidated damages even though it was significant to the agreement. Appellants' Br. at 38-43.

NIC offers two defenses of the District Court's action. First, NIC confuses NTG's positions on materiality and enforceability. Appellee

Br. at 36-38. As NTG pointed out, under California law, a term is "material" when it is "an important term that affects the value of the bargain." *Facebook Inc. v. Pacific Northwest Software, Inc.*, 640 F.3d at 1037-38 (9th Cir. 2011). NIC does not dispute that ██████████ ████████████████████████████ Appellee Br. at 36-38. It nonetheless contends that "the omission of certain 'material' terms does not render the Term Sheet unenforceable." Appellee Br. at 37. NIC would be correct if the parties had not contracted for liquidated damages. In *Facebook*, the Court noted that the omission of a term affecting the value would not foreclose enforcement where "the terms it does include are sufficiently definite for a court to determine whether a breach has occurred, order specific performance or award damages." 640 F.3d at 1037-38. The difficulty with NIC's and the District Court's position is that liquidated damages was not an "omitted" term. Rather, it is a provision that the parties specifically agreed to. Nothing in *Facebook*, nor any other authority cited by NIC, allows a court to remove material provisions that have been agreed to. Under California law, a court has "no power to make new contracts for the parties . . . ." *Id. quoting Bailard v. Marden*, 36 Cal. 2d 703, 708 (1951); *Levi Strauss & Co. v. Aetna Casualty & Surety Co.*, 184 Cal. App. 3d 1479, 1486,

237 Cal. Rptr. 473 (1986) ("The court ... cannot insert in the contract language which one of the parties now wishes were there."). Similarly, "[i]t is widely recognized that the courts are not at liberty to revise an agreement under the guise of construing it. Neither abstract justice nor the rule of liberal interpretation justifies the creation of a contract for the parties which they did not make themselves." *Hinckley v. Bechtel Corp.*, 41 Cal. App. 3d 206, 210 (1974).

Second, NIC contends that liquidated damages was an unenforceable penalty. Appellee Br. at 38-40. "The term 'liquidated damages" is used to indicate an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement, and which may not ordinarily be modified or altered when damages actually result from nonperformance of the contract.' [Citation.] 'Liquidated damages constitute a sum which a contracting party agrees to pay ... for breach of some contractual obligation.'" *McGuire v. More-Gas Investments, LLC*, 220 Cal. App. 4th 512, 521 (2013). "Courts look beyond the language of the contract to determine the actual circumstances of a liquidated damages clause." *Del Monte Properties & Investments, Inc. v. Dolan* 26 Cal. App. 5th Supp. 20, 23 (2018).

NIC's argument fails for three reasons. First, there is no amount to evaluate for purposes of a penalty analysis because firm agreement was not reached on an amount. Thus, it is not possible to determine whether the amount was "reasonable."

Second, NIC has the burden of proving unreasonableness and it has offered no evidence on this point. As this Court has confirmed, liquidated damages clauses are presumptively valid under California law unless the objecting party can prove "the provision was unreasonable under the circumstances existing at the time the contract was made." *Tycom Corp. v. BancBoston Ventures, Inc.*, 108 F.3d 1386 (9th Cir. 1997). Here, like in *Tycom* where this Court found that a $250,000 liquidated damages provision that "was negotiated at arms length by two sophisticated commercial parties," NIC "offers no evidence on this score." *Id.*; Appellee Br. at 39. NIC would be hard pressed to make such a showing. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

█████████████████████████████ Given

its proclivity for calling NTG "unethical" and "criminal," it is difficult

to fathom that a breach by NIC would not cause significant reputational

harm to NTG. The amounts under discussion – ████████████████

████████████████████████ – could easily be realized

from the loss of a single client. *See e.g.*, *Lunada Biomedical v. Nunez*,

230 Cal. App. 4th 459, 468, 178 Cal. Rptr. 3d 784, 792 (2014)

(awarding NTG and another attorney $104,293.75 in attorneys' fees

from a successful anti-SLAPP motion).

Third, this is not an adhesion contract case. "As a general

principle, courts defer to freely negotiated contract provisions that are

'the product of an arms-length transaction between sophisticated

businessmen, ably represented by counsel.'" *GT Sec., Inc. v. Klastech

GmbH*, No. 13-CV-03090-JCS, 2015 WL 2374609, at *9 (N.D. Cal.

May 15, 2015). In such circumstances, courts are more likely to uphold

liquidated damages. In *Blank v. Borden*, 11 Cal. 3d 963, 972, 524 P.

2d 127, 132 (1974), the California Supreme Court upheld a liquidated

damages clause when it was not in a "situation wherein the party who

seeks to enforce the clause enjoyed a vastly superior bargaining position at the time the contract was entered into." *Id.*; *California & Hawaiian Sugar Co. v. Sun Ship, Inc.*, 794 F.2d 1433, 1439 (9th Cir. 1986), *opinion amended on denial of reh'g,* 811 F.2d 1264 (9th Cir. 1987) ("When sophisticated parties with bargaining parity have agreed what lack of this prize would mean, and it is now difficult to measure what the lack did mean, the court will uphold the parties' bargain.").

Accordingly, the District Court erred eliminating the liquidated damages that the parties agreed to.

## E. NIC's Arguments Regarding The Enforceability Of The Term Sheet Are Beside The Point

NIC argues at length that the Term Sheet is "enforceable." Appellee Br. at 24-26. It includes pages of cases supporting the unremarkable proposition that in some circumstances there can be a binding agreement even if later agreement is contemplated. *Id.* It is unclear why NIC is so arguing.

The issue is not enforceability but rather NIC's efforts to rewrite the Term Sheet and avoid the clear obligations to negotiate in good faith, *inter alia*, the scope of confidentiality, the scope of ██ ████████████████ , and the amount of liquidated damages.

While this case has settled in principle based on the material provisions set forth in the Term Sheet, that does not mean that NIC and/or the Court can force Appellants into a final settlement that undermines or contradicts those same provisions.

## IV.  THE TRIAL COURT DID NOT ERR IN DENYING NIC'S MOTION FOR SANCTIONS

NIC's appeal of the District Court's Order denying its request for sanctions is factually and legally frivolous.  NIC's factual predicate is fictional.  There never was a proposal to limit NIC's counsel's ability to practice law.  *Supra*.Part.III.B.  ███████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████  And during the four months of settlement negotiations,

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████

NIC has failed to cite any case from any jurisdiction sanctioning a party for proposing such a settlement agreement. Indeed, most of NIC's sanctions arguments consist of vitriolic irrelevancies, like complaining about NTG pointing out the tension between NIC's counsel's advertising interest and NIC's settlement interest. Appellee Br. at 51. It offers less than honest speculation in claiming a nefarious purpose of seeking to keep "NIC and its counsel from reporting to the State Bars evidence of unethical conduct discovered during NIC's RICO lawsuit."[5] Appellee Br. at 19. A party's "speculation that the assertion was made for an improper purpose is not sufficient for the imposition of sanctions . . . . ." *Quinteros v. InnoGames*, No. C19-1402 RSM, 2020 WL 995854, at *4 (W.D. Wash. Mar. 2, 2020); *Wilkins v. Barber*, No. 219CV1338WBSKJNP, 2021 WL 4992665, at *2 (E.D. Cal. Oct. 27, 2021), *aff'd,* No. 219CV1338WBSKJNP, 2022 WL 673868 (E.D. Cal. Mar. 7, 2022) (denying sanctions when moving party "submits nothing other than his conjecture and speculation that counsel

---

[5]  As seen above, confidentiality clauses are common in settlement agreements. NIC's premise that a defendants' desire to put an end to a plaintiff demeaning it is an "improper purpose" has no support in the case law. Broadly applied, it would mean that any defendant could be sanctioned for advocating a confidentiality clause.

did so in bad faith or for an improper purpose.").  Further, NIC knows full well that NIC and its counsel had been habitually complaining to the State Bar for years.  *See* (5-ER-871, fn. 9).



**A.** **NIC Offered No Evidence Of Improper, Much Less Sanctionable Conduct**

The lack of merit to NIC's appeal regarding sanctions is evident from the fact that NIC fails to specify the legal basis for its sanctions request (i.e., inherent authority vs. Rule 11) or the legal requirements for imposing sanctions.  *See* Appellee Br. at 40-52.

A district court's inherent power to impose sanctions "extends to a full range of litigation abuses."  *Chambers v. NASCO, Inc*., 501 U.S. 32, 46 (1991).  It applies only "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id*. at 43.  "A

specific finding of bad faith ... must 'precede any sanction under the court's inherent powers." *United States v. Stoneberger*, 805 F.2d 1391 (9th Cir.1986); *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). Here, the District Court made the opposite finding. Reviewing the evidence, it held that "[t]he Court is not persuaded that Defendants' conduct rises to the level of recklessness or bad faith that would support the imposition of sanctions." (1-ER-12.) The finding that Appellants did not act in bad faith is reviewed for "clear error." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1166 (9th Cir. 2019) ("We review a district court's finding on the question of bad faith for clear error.").

Such a finding would be reviewed for abuse of discretion. *Harbor*

"Clear error exists when, although there is evidence to support the lower court's conclusion, the reviewing court is left with the 'definite and firm conviction that a mistake has been made.'" *In re Adamson Apparel, Inc.*, 785 F.3d 1285, 1291 (9th Cir. 2015) *quoting ASM Capital, LP v. Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d Cir.2009). It is only *after* a finding of bad faith that the District Court considers whether sanctions are appropriate. *Fink*, 239 F.3d at 992. Such a finding would be reviewed for abuse of discretion. *Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117 (9th Cir. 2000).

**1. NIC Has No Actual Evidence Of Bad Faith With Regard To The Confidentiality Provision**

Here, NIC has no evidence of bad faith, much less enough to overcome the deference afforded to the District Court's opposite finding. As seen above, there is no evidence that the Appellants sought to restrict NIC's practice of law at any point during settlement negotiations.



None of this portrays bad faith on the part of Appellants. A fair rendering of the facts is that NIC (mostly its counsel) just dislikes confidentiality and is making up a reason for rejecting it.

NIC cites no case for the proposition that seeking a confidentiality clause is improper based on speculation about the party's motive. In *Assassination Archives & Rsch. Ctr. v. C.I.A.*, 48 F. Supp. 2d 1, 14 (D.D.C. 1999), the court characterized an argument much like NIC's as "[b]order[ing] on the preposterous." There, a party sought to nullify a confidentiality agreement he had signed and violated by claiming, inter alia, that the "confidentiality agreement that had an improper purpose, one designed to defeat justice and cover-up misrepresentations by the CIA." *Id*. Like NIC, the party failed "to

present the Court with any credible evidence of such an intent." *Id*.

The court noted that while "the prevention of corruption" was a public

interest, "it is hard to see how this interest can render invalid a facially

ordinary confidentiality agreement without some evidence that the

agreement suffers from a defect in its purpose or formation." *Id*. The

"courts have a strong interest in supporting the out-of-court resolution

of cases through settlement; this furthers economy of judicial and

private resources, and it allows the parties to have the maximum control

over the resolution of their disputes. Confidentiality agreements play an

integral role in settlement in many circumstances . . . ." *Id*.

Accordingly, NIC has not shown an improper purpose.

## 2. NIC's Rule That Broader Confidentiality Necessarily Violates Rule 5.6 Is Fabricated

NIC's sanctions request was all the more inappropriate because

it is predicated on Appellants having violated a "rule" that does not

exist. As the District Court correctly observed, NIC's "authority" for

its legal proposition that broader confidentiality clauses necessarily

violate Rule 5.6's prohibition on restricting the practice of law are

regional bar association opinions that "are not binding and consider

somewhat different language from Appellants' proposals." (1-ER-10.)

Sanctions require proof that a party violated a controlling and clear rule. A "legal claim for which no mandatory authority exists does not present good grounds for sanctions because the law of the jurisdiction is unsettled." *Remington Invs., Inc. v. Kadenacy*, 930 F. Supp. 446, 451 (C.D. Cal. 1996). This Court has cautioned against sanctions in "an area of law which cannot be regarded as settled." *Hudson v. Moore Business Forms, Inc*. 836 F.2d 1156 at 1160 (9th Cir. 1987).

NIC is unable to cite any court from any jurisdiction adopting its extreme position that confidentiality provisions constitute a per se restriction on the practice of law. In fact, many cases reject it.[6] In *Tradewinds Airlines, Inc. v. Soros*, No. 08 CIV. 5901 JFK, 2009 WL 1321695, at *2 (S.D.N.Y. May 12, 2009), for example, the District Court did not find problematic a settlement agreement containing a confidentiality clause covering "the claims for relief sought against [defendants] and the bases or asserted bases therefore . . ." *Id.* The

---

[6] NIC quibbles with all these cases, claiming they "reference public policy of California." *See generally* Appellee Br. at 35-36. That hardly helps NIC since all of the cases generally assess and reject the exact argument made by NIC – that a broader confidentiality provision necessarily violates the prohibition on restricting the practice of law. More to the point, a party seeking sanctions for violation of a supposed rule should be able to cite controlling cases espousing the rule.

District Court characterized it as "a standard confidentiality provision" and refused to read it "as an implied restriction on counsel's ability to represent other clients, especially as such a restrictive covenant would itself violate ethical rules." *Id.* at *9. NIC claims the case was different because there, "the proponent of contractual limitations acknowledged that restrictions on public information would be improper." Appellee Br. at 35. The language cited by NIC is referring to a protective order, not the parties' settlement confidentiality provision. *Tradewinds Airlines, Inc. v. Soros*, No. 08 CIV. 5901 JFK, 2009 WL 1321695, at *6 (S.D.N.Y. May 12, 2009) ("Because that information became public through no fault of Grayson, the Protective Order does not restrict her from using it.").

Moreover, in *Kimmel & Silverman, P.C. v. Porro*, 969 F. Supp. 2d 46, 48 (D. Mass. 2013), there was an alleged breach of a confidentiality clause in a settlement agreement that prohibited disclosure of "any information regarding the underlying facts leading up to or the existence or substance of this Agreement . . . ." *Id.* Even though this prohibition broadly covered all "underlying facts," the District Court still rejected the argument that "enforcement of the Settlement Agreement against the defendants would improperly restrict

a lawyer's right to practice, in violation of the Massachusetts Rules of Professional Conduct 5.6(b)." *Id.* at 51. NIC points out that the case is not from California. Appellee Br. at 36. But Massachusetts Rule of Professional Conduct 5.6 and California Rule of Professional Conduct 5.6 are substantively identical. *Compare* Mass. R. Prof. Conduct R. 5.6 (prohibiting "an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy.") *with* Cal. R. Prof. Conduct R. 5.6 (prohibiting "an agreement that imposes a restriction on a lawyer's right to practice in connection with a settlement of a client controversy, or otherwise.").

Similarly, in *Huynh v. City of Worcester*, No. CIV.A. 08-40240-TSH, 2010 WL 3245430, at *1 (D. Mass. Aug. 17, 2010), a section 1983 case settled with a release that contained "a confidentiality clause which barred the Plaintiff or his attorney from discussing the merits of the case, other than the fact that the case had settled." *Id.* Subsequently, the plaintiff attorney "commented on the individual Defendants' conduct, calling it 'egregious,' and saying it 'reflected bad judgment.'" The District Court found a breach of the settlement provision without any indication that the confidentiality clause was improper. *Id.* at *3. Again, the Massachusetts Rule is the same as for California.

Lacking any applicable case law, NIC selectively cites various ethical opinions that do not support its extreme position. Appellee Br. at 45. A fair distillation of the various opinions was stated in *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015), where the Court explained that "[e]ach of the ethics opinions recognizes, either explicitly or implicitly, that prohibitions on disclosure of confidential settlement information are permissible, but prohibitions on use of settlement information is inappropriate if the restriction would prevent an attorney from representing other clients in the future." *Id.*

The general prohibition on attorneys referring to restrictions on disclosures simply does not exist. Before the District Court, NIC relied on ABA Formal Opinion No. 00-417, but the language there undermines NIC's own position. The opinion states, "it generally is accepted that offering or agreeing to a bar on the lawyer's disclosure of particular information is not a violation of the Rule 5.6(b) proscription. For example, Rule 5.6(b) does not proscribe a lawyer from agreeing not to reveal information about the facts of the particular matter or the terms of its settlement." (2-ER-136). The ABA opinion goes on to explain, "[a] proposed settlement provision, agreed to by the client, that

prohibits the lawyer from disclosing information relating to the representation is no more than what is required by the Model Rules absent client consent, and does not necessarily limit the lawyer's future practice in the manner accomplished by a restriction on the use of information relating to the opposing party in the matter." According to the ABA, "Rule 5.6(b) would not proscribe offering or agreeing to a nondisclosure provision." *Id.*

This is hardly a surprising position given that confidentiality provisions covering the underlying claims are quite common. *Pappas v. Chang*, 75 Cal. App. 5th 975, 977 (2022) (the "release to include a provision for mutual confidentiality as to the facts of the underlying case, the terms and amount of this agreement."); *Gilbert v. Nat'l Corp. for Hous. Partnerships*, 71 Cal. App. 4th 1240, 1252, 84 Cal. Rptr. 2d 204, 211 (1999) ("Whatever the intent of appellant's attorney, the Confidentiality Clause clearly imposed significant limits on what, if anything, the four signatories could safely say about the facts underlying the Settlement Agreement."); *M.G. v. O.G.*, No. B254358, 2016 WL 4199178, at *2 (Cal. Ct. App. Aug. 9, 2016) ("a confidentiality clause contained in the Settlement Agreement, M.G. and O.G. 'agree[d] that any and all information and facts related to the

asserted claims and events underlying this Agreement ... shall remain confidential as between the Parties.'").

Accordingly, because NIC's sanction request was based on a non-existent legal rule, the District Court correctly denied it.

## B. NIC's Other Arguments For Sanctions Are Inappropriate And Irrelevant

Unable to show a violation of any legal rule, NIC offers a collection of other complaints against Appellants. NIC's point seems to be that NTG should be sanctioned because, according to NIC, NTG is a generally bad actor with nefarious motives. Appellee Br. at 40-51.

It claims, without any evidence at all, that confidentiality was part of a plot to keep "NIC and its counsel from reporting to the State Bars evidence of unethical conduct discovered during NIC's RICO lawsuit." Appellee Br. at 19. It is frankly unclear how NIC could make such a claim since it knows full well that it has been complaining to the bar for years. It asserts that NTG "tried to create a conflict of interest between NIC and its counsel regarding the unethical contract terms." Appellee Br. at 51. It seems apparent that NIC's counsel wishes to use this case for advertising – even to this Court it complains that confidentiality would keep it from "defending against similar

racketeering activity in the future" and "would prevent counsel from advising potential clients based on counsel's experiences gleaned from motions and facts developed in the underlying case." Appellee Br. at 48, 51. In its briefing to the District Court, NTG cited the Los Angeles County Bar admonition that attorney arguments regarding the impropriety of "a confidentiality clause . . . may simply mask the attorney's self-interest in advertising his success." (14-ER-3165). That was, and remains, a fair explanation for the current dispute. But it has nothing at all to do with sanctions.

Accordingly, this Court should affirm the portion of the Order denying sanctions.

## V.  **CONCLUSION**

For the foregoing reasons, the Order is erroneous and should be reversed except as to its denial of sanctions.

Dated:  June 30, 2023            **CALLAHAN & BLAINE, APLC**

By:  /s/ James M. Sabovich
      David J. Darnell
      James M. Sabovich
      Attorneys for Appellants

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Circuit Rule 32-1(a) and Federal Rules of Appellate Procedure 32(a)(5)(A). This brief uses a proportional typeface and 14-point font, and contains 9,562 words and is 55 pages.

Dated: June 30, 2023      **CALLAHAN & BLAINE, APLC**

By: /s/ James M. Sabovich
    David J. Darnell
    James M. Sabovich
    Attorneys for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ James M. Sabovich
James M. Sabovich